UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KADEEM MORGAN,

                         Plaintiff,

      -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT POLICE OFFICER
OLDSON AJESULAS, Tax Reg. No.: 942931, and NEW
YORK CITY POLICE DEPARTMENT SERGEANT
JONATHAN ROSARIO, Tax Reg. No.: 942478,

                        Defendants.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Case No.: 1:15-cv-03899-SJ-LB

      Plaintiff, **KADEEM MORGAN**, by and through his attorney, **DAVID J. HERNANDEZ &**

**ASSOCIATES**, submits this Memorandum of Law in in Opposition to defendants' Motion for Summary

Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

      Plaintiff, **KADEEM MORGAN**, respectfully submits this Memorandum of Law in opposition to

defendants' Motion for Summary Judgment. Defendants' motion must be denied as there was no probable

cause for plaintiff's arrest and he is not collaterally estopped from arguing same.

## STATEMENT OF FACTS

      On July 11, 2014, at approximately 9:30 P.M., Plaintiff was on his way to Francesco's Pizzeria,

located at 70-29 Parsons Boulevard in the County of Queens, City and State of New York, when, from a

distance, he saw non-party Brent Martin, with whom Plaintiff did not interact. (Plaintiff's Rule 56.1

Counter-Statement (hereinafter "P56.1"), ¶¶ 2 & 17; Excerpts from the Transcript of the Deposition of

Kadeem Morgan ("Morgan Dep."), dated May 17, 2016, Declaration of David J. Hernandez, Esq.[1], *Exhibit*

*A*, pp: 74:14—80:13; Affidavit of Kadeem Morgan ("Morgan Aff."), dated February 2, 2017, *Exhibit D*.)

      As Plaintiff proceeded into Francesco's Pizzeria, he was unlawfully arrested by Defendant, Police

Officer Oldson Ajesulas (hereinafter "Ajesulas"). (Complaint, Docket Entry #1 ("Compl."), *Exhibit B*, ¶¶

13, 15-16.) Per the pre-arraignment notification report, Plaintiff was arrested for an alleged violation of

---

[1] All Exhibits are annexed to the Declaration of David J. Hernandez, Esq.

New York Penal Law § 220.31. (Pre-Arraignment Report ("Pre-Arraignment Report"), Defendants' Rule 26(A) Initial Disclosures ("D26(A)"), ***Exhibit E***.) However, Plaintiff was formally charged with violations of N.Y.P.L. §§ 220.44 (Criminal Sale of a Controlled Substance in or near School Grounds) and 220.39 (Criminal Sale of a Controlled Substance in the Third Degree). (Id.) At the time of this arrest, Plaintiff was serving five (5) years' probation. (P56.1.)

At Plaintiff's arraignment on July 12, 2014, he was released on his own recognizance and was given a court date of August 1, 2014 for the charges related to his July 11, 2014 arrest. (Compl., ¶¶ 13, 15-16.) At the August 1, 2014 court appearance, Plaintiff was preliminarily deemed to have violated the terms of his then-pending five (5) year probation and was remanded into custody. (P56.1, ¶ 13; Compl., ¶ 17.) Plaintiff was held in custody based upon a mere preliminary determination from August 1, 2014 until his Violation of Probation ("VOP") Hearing on December 19, 2014. (Id.) Plaintiff made numerous appearances in criminal court with respect to his July 11, 2014 arrest.

At the VOP Hearing on December 19, 2014, held before the Honorable Justice Douglas Wong of the Queens County Supreme Court, Plaintiff admitted to a VOP specification concerning the July 11, 2014 arrest that included: 1) a term of ten (10) months of imprisonment, accounting for time served; and 2) an admission of probable cause as to said arrest. (Excerpts from the Transcript of Kadeem Morgan's Violation of Probation Hearing ("VOP Trans."), dated December 19, 2014, ***Exhibit C***, pp. 7-9; P56.1, ¶ 15.) Notably, however, Plaintiff did not have a full and fair opportunity to litigate the issue of probable cause at his VOP Hearing. (See *infra*.)

The criminal charges stemming from Plaintiff's July 11, 2014 arrest were dismissed on motion of the Queens County District Attorney's Office on February 3, 2015. (P56.1, ¶ 16; Compl., ¶ 18.) Plaintiff was not released from custody until early February, 2015. (Compl., ¶ 19.) Plaintiff then commenced this action under 42 U.S.C. § 1983 asserting claims for, *inter alia*, false arrest. (Compl.) Defendants have now moved for summary judgment arguing that Plaintiff's admission as to Specification 1 at his December 19, 2014 VOP hearing (the prior action) collaterally estops Plaintiff from arguing that there was no probable

cause for his July 11, 2014 arrest.  (See generally Memorandum of Law in Support of Defendants' Motion for Summary Judgment (hereinafter "D's Mem. of Law").)

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Redd v. N.Y. Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012).  In deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments."  Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).  Thus, "credibility assessments, choices between conflicting versions of events and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."  Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).  "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party."  Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991).  Summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

As will be shown below, questions of fact exist as to whether there was probable cause for Plaintiff's July 11, 2014 arrest and Plaintiff is not collaterally estopped from arguing same.

## DISCUSSION

### POINT I—SUMMARY JUDGMENT MUST BE DENIED AS TO FALSE ARREST CLAIM

Defendants argue that Plaintiff is collaterally estopped from contesting probable cause for his July 11, 2014 arrest because he conceded to a VOP specification that included a finding of probable cause with respect to that arrest.  However, collateral estoppel does not apply here because there was no identity of issue between the finding of probable cause in the prior action and such a finding in this action and because Plaintiff did not have a full and fair opportunity to litigate the issue of probable cause in the prior action.

### A.    False Arrest Standard

A § 1983 claim for false arrest is substantially the same as such a claim under New York law. <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996)(internal citations omitted). "To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not … privileged." <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994).

**B.      Collateral Estoppel Does Not Apply Here To Bar Litigation of Probable Cause Issue**

Under the doctrine of collateral estoppel, "[o]nce a matter has been litigated and decided, a party may be foreclosed from litigating the same issue again." <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996). The doctrine applies to actions brought under 42 U.S.C. § 1983 in federal court. <u>Id.</u> "In such a suit, a state court judgment must be given the same preclusive effect as it would have under the law of the state in which it is rendered." <u>Id.</u> As Plaintiff's VOP hearing took place in Queens County Criminal Court, this Court must analyze Plaintiff's VOP hearing "in light of New York issue preclusion law." <u>Id.</u>

Under New York law, "issue preclusion applies only to those matters actually litigated and determined in a prior action." Therefore, "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling." <u>Id.</u> at 72 (<u>quoting</u> <u>Schwartz v. Public Adm'r</u>, 24 N.Y.2d 65, 71 (N.Y. Ct. of App. 1969)).

Here, there is not "an identity of issue which has necessarily been decided in the prior action and is decisive of the present action," nor did Plaintiff have a "full and fair opportunity to contest the decision now said to be controlling." <u>Id.</u> Accordingly, Plaintiff is not collaterally estopped from claiming that there was no probable cause for his July 11, 2014 arrest and defendants' Motion for Summary Judgment must be denied as to Plaintiff's false arrest claim.

**i.      Identity and Decisiveness of Issue**

Defendants have failed to demonstrate the "identicality and decisiveness of the issue[,]" which is their burden. <u>Ryan v. New York Telephone Co.</u>, 62 N.Y.2d 494, 501 (N.Y. Ct. App. 1984).

4

Under the law of this Circuit, "a guilty plea in no way bars a Section 1983 claim under principles of collateral estoppel, waiver or mootness, where the alleged constitutional violations were not necessarily answered by the admission." Powers v. Coe, 728 F.2d 97, 102 (2d Cir. 1984). This is so because "when a court accepts a defendant's guilty plea, there is no adjudication whatsoever of any issues that may subsequently be the basis of a § 1983 claim." Haring v. Prosise, 103 S.Ct. 2368, 2377-78, n. 11 (1983). Notably, "[t]he Second Circuit has narrowly limited the operation of issue preclusion in 1983 actions." East Coast Novelty Co., Inc., v. City of New York, 781 F.Supp. 999, 1005 (S.D.N.Y. 1992).

In this case, defendants argue that Plaintiff's guilty plea to a VOP specification that included a finding of probable cause to arrest precludes him from bringing a false arrest claim for criminal sale of a controlled substance and criminal sale of a controlled substance in or near school grounds. (See D's Mem. of Law.) However, the Second Circuit has held that a Plaintiff's guilty plea to an unrelated charge does not bar a false arrest claim for the original charge. Kent v. Katz, 312 F.3d 568, 574 (2d Cir. 2002).

In Kent, plaintiff was originally arrested by for drunk driving; however, the state reduced the charge against plaintiff from DWI to careless and negligent operation of a motor vehicle, to which plaintiff pled guilty. Plaintiff brought suit for false arrest and defendants moved to dismiss on the ground that plaintiff's guilty plea precluded his false arrest claim. The Second Circuit rejected this argument:

> Although there eventually was a final judgment in the criminal proceeding against [plaintiff], that judgment **did not** decide the issue of whether or not [defendant] had probable cause to arrest [plaintiff] for DWI. The DWI charge was changed by the state to one of Negligent Operation ... and Negligent Operation, not DWI, is the charge that was resolved by the final judgment. ... In sum, there was no final judgment that decided the question of probable cause to believe that [plaintiff] had driven while under the influence of alcohol.

Kent, 312 F.3d at 574.

The same reasoning applies here. While Plaintiff did admit to a VOP specification of probable cause to arrest, at no point in Plaintiff's VOP hearing was it indicated that he pled guilty to probable cause to arrest under the two provisions of the penal law pursuant to which Plaintiff was charged, to wit, N.Y.P.L. §§ 220.44 and 220.39. (See generally VOP Trans.) Furthermore, Plaintiff was initially arrested for an alleged violation of N.Y.P.L. § 220.31, not the two provisions pursuant to which he was formally charged.

5

(Pre-Arraignment Report.) At no point in Plaintiff's VOP hearing was it indicated that he pled guilty to probable cause to arrest under the provision of the penal law pursuant to which he was initially arrested. Thus, there was never an adjudication of Plaintiff's guilt on the N.Y.P.L. §§ 220.44, 220.39 and 220.31 charges. Since the merits of the charges were never addressed, "the alleged constitutional violations were not necessarily answered by the admission." Powers v. Coe, 728 F.2d 97, 102 (2d Cir. 1984).

As noted above, "issue preclusion applies only to those matters actually litigated and determined in a prior action[,]" such that "[t]here must be an identity of issue which has **necessarily been decided** in the prior action and is decisive of the present action." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Here, Plaintiff was arrested for an alleged violation of N.Y.P.L. § 220.31 and was subsequently charged with violations of N.Y.P.L. §§ 220.44 and 220.39. Plaintiff pled guilty to the VOP specification of "having been arrested while on probation." (VOP Trans., p. 7.) Plaintiff did not plead to probable cause to arrest on any of the aforementioned provisions of the penal law.

So while the underlying arrest is the same, the N.Y.P.L. §§ 220.44, 220.39 and 220.31 charges were not resolved by the final judgment at Plaintiff's VOP hearing. Kent, 312 F.3d at 574. Consequently, there is no identity of issue here and defendants' motion must be denied.

ii.     **Full and Fair Opportunity to Litigate**

In determining whether Plaintiff had a full and fair opportunity to litigate the issue of probable cause at his VOP hearing, the Court may look at several factors, including: the size the of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The New York Court of Appeals in Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71 (N.Y. Ct. of App. 1969) also considered "the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter." Conte v. Justice, 996 F.2d 1398, 1401 (2d Cir. 1993)(citing Schwartz, 24 N.Y.2d at 72).

Here, a consideration of the "context and circumstances surrounding the prior litigation" evinces clearly that Plaintiff was "deterred [. . .] from fully litigating the matter." *Id.* Notably, Plaintiff's VOP hearing took place after he had been incarcerated for approximately *five (5) months* on strength of a *preliminary* finding that he violated probation. (P56.1, ¶ 13; Compl., ¶ 17; Morgan Aff., ¶¶ 11-12.) This incarceration caused Plaintiff to miss the birth of his first child, which caused Plaintiff immense emotional distress. (P56.1, ¶ 13; Compl., ¶¶ 17, 20; Morgan Aff., ¶¶ 11-15.) Plaintiff testified at his deposition that he was "depressed ... due to ... getting remanded the day before [his] baby shower and missing [his] daughter's birth." (Morgan Dep., 106:11-13.) Though Plaintiff was represented by counsel at his VOP hearing, said representation was insufficient to alleviate the emotional distress that Plaintiff felt as a consequence of his incarceration. (Morgan Aff., ¶¶ 13-15.)

Moreover, pursuant to N.Y.C.P.L. § 410.70, "[t]he defendant is entitled to a hearing in accordance with this section promptly after the court has filed a declaration of delinquency or has committed him or has fixed bail pursuant to this article." Plaintiff was committed on August 1, 2014 when he was preliminarily deemed to have violated the terms of his then-pending five (5) year probation and was remanded into custody. (P56.1, ¶ 13; Compl., ¶ 17; Morgan Aff., ¶¶ 11-12.) Plaintiff was held in custody, based upon a mere preliminary determination, from August 1, 2014 until his Violation of Probation ("VOP") hearing on December 19, 2014 – a total of *one hundred and forty (140) days* or *four (4) months and eighteen (18) days* – vitiating N.Y.C.P.L. § 410.70's mandate that defendants are entitled to a "prompt[]" hearing. (P56.1, ¶ 13; Compl., ¶ 17; Morgan Aff., ¶¶ 11-15.) Further, it is clear that Plaintiff did not understand the proceedings before him at his VOP hearing. When asked at his deposition if he admitted to probable cause at said hearing, Plaintiff stated that he did not; rather, he believed that he "took [sic] a VOP for ... not showing up to a job fair." (Morgan Dep., 56:9-17.)

It is axiomatic that in considering a motion for summary judgment, a court must view the evidence in the light most favorable to and draw all reasonable inferences in favor of the party opposing said motion. Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). The evidence is clear as to the fact that that Plaintiff was jailed for over *four (4) months* based on a preliminary finding that he violated probation, (P56.1, ¶ 13;

Compl., ¶ 17; Morgan Aff., ¶¶ 11-15.); this incarceration was excessive when one considers that it was based on a mere *preliminary* finding; the egregiousness of such excess is compounded by the fact that the very statute that guarantees Plaintiff a hearing to determine whether he actually did violate probation mandates that said hearing be held "promptly" after Plaintiff's "commitment", (N.Y.C.P.L. § 410.70.); during the *four (4) months* that Plaintiff was incarcerated, Plaintiff's first child was born and Plaintiff was forced to miss that joyous occasion (Compl., ¶ 20; Morgan Aff., ¶¶ 13-14, 19); an inference must be drawn in Plaintiff's favor that he was deeply affected by having missed his child's birth as he testified at his deposition that he was "depressed … due to … getting remanded the day before [his] baby shower and missing [his] daughter's birth." (Morgan Dep., 106:11-13.)

In determining whether a party had a full and fair opportunity to litigate, the New York Court of Appeals has considered "the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter." Conte v. Justice, 996 F.2d 1398, 1401 (2d Cir. 1993)(citing Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71 (N.Y. Ct. of App. 1969)). Based on the above, and viewing the evidence in the light most favorable to and drawing all reasonable inferences in favor of Plaintiff, Weyant, 101 F.3d at 854, it is clear that Plaintiff was deterred from fully litigating the issue of probable cause at his VOP hearing. (Morgan Aff., ¶¶ 11-15.)

Defendants argue that Plaintiff's "acceptance of the Court's offer trimmed only two months off his sentence (as compared to the year of incarceration previously offered by the Court), which is hardly 'a substantially longer period of time'." (See D's Mem. of Law, p. 11.) Though this may seem like an insignificant amount of time for Defendants and their counsel, it was certainly not an insignificant amount of time for Plaintiff, who was "depressed … due to … getting remanded the day before [his] baby shower and missing [his] daughter's birth." (Morgan Dep., 106:11-13.)

Defendants further argue that "[i]n the context of collateral estoppel, the prospect of repercussions serves to create an *incentive to litigate*, not a disincentive as plaintiff appears to contend." (See D's Mem. of Law, p. 11.) This statement, however, rings hollow when repercussions are no longer a mere prospect but the reality under which Plaintiff was forced to live for four plus months. This is not a case where

Plaintiff was charged and was unable to make bail, or where the gravity of the charge against Plaintiff militated against offering bail; rather, Plaintiff was released the day after his arrest on July 11, 2014 and was told to return to court on August 1, 2014, at which time he was deemed to have **preliminarily violated probation**, resulting in his "commitment" from August 1, 2014 through December 19, 2014, all without an actual finding of violation or guilt. (P56.1, ¶ 13; Compl., ¶ 17; Morgan Aff., ¶¶ 11-19.) Accordingly, at the time of Plaintiff's VOP hearing on December 19, 2014, Plaintiff had already been forced to face repercussions for his July 11, 2014 arrest, even without an actual finding that the Plaintiff had violated his probation. (P56.1, ¶ 13; Compl., ¶ 17.) This prolonged detention, as well as the birth of Plaintiff's child, deterred Plaintiff from litigating the issue of probable cause for his July 11, 2014 arrest.

Further, with respect to the forum of the prior litigation, the finding of probable cause as to Plaintiff's July 11, 2014 arrest occurred at a VOP hearing, not a criminal trial for said arrest. (P56.1, 15, 19-20.) "[I]f the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." Golino v. City of New Haven, 950 F.2d 864, 869 (2d Cir. 1991). A VOP hearing is a summary proceeding, and is conducted without a jury. N.Y.C.P.L. § 410.70. Further, "the issue at a violation of probation hearing [was] not whether [Plaintiff] committed a subsequent crime, but only whether he violated a condition of his probation, an issue which does not implicate to the same degree the procedural safeguards normally available in a criminal action." People v. Sawinski, 294 A.D.2d 667, 668 (3d Dep't. 2002). Also, the standard of proof at a VOP hearing is "preponderance of the evidence." N.Y.C.P.L. § 410.70. Plaintiff would have been more likely to fully contest probable cause at his VOP hearing if the State had to prove its case beyond a reasonable doubt.

Another occurrence at Plaintiff's VOP hearing that resulted in a *de facto* procedural limitation not present in this action is that Plaintiff was not advised by the court at his VOP hearing that by accepting the court's offer, he was waiving his right to appeal a finding of probable cause. (See N.Y.C.P.L. § 410.70; VOP Trans.) It is well settled that:

> [a] defendant may waive the right to appeal as part of a bargained-for plea agreement ... [W]here the plea allocution demonstrates a knowing, voluntary and intelligent waiver of the right to appeal, intended comprehensively to cover all

aspects of the case, and no constitutional or statutory mandate or public policy concern prohibits its acceptance, the waiver will be upheld completely.

People v. Kemp, 94 N.Y.2d 831, 833 (N.Y. Ct. App. 1999). At Plaintiff's VOP hearing, upon being informed by Plaintiff's counsel that Plaintiff would be accepting the court's offer, Judge Wong asked if Plaintiff "waive[s] his right to any hearing?" (VOP Trans., 8:23-24.) Judge Wong, however, did not illicit from Plaintiff any information tending to demonstrate that Plaintiff made a "knowing, voluntary and intelligent waiver of the right to appeal." (Kemp, 94 N.Y.2d at 833; see generally VOP Trans.) Though the trial courts are not obligated to espouse a particular litany during an allocution to affect an enforceable waiver, Kemp, 94 N.Y.2d at 833, there must be some sort of showing that the waiver was knowingly, voluntarily and intelligently given for said waiver to be effective. People v. Moissett, 76 N.Y.2d 909, 911-12 (N.Y. Ct. App. 1990). In People v. Seaberg, 74 N.Y. 2d 1 (N.Y. Ct. App. 1989), the New York Court of Appeals held that the trial court should have required the defendant there to "state his understanding and acceptance" of his waiver of right to appeal. Id. Similarly, the court at Plaintiff's VOP hearing should have demanded that Plaintiff "state his understanding and acceptance" of his waiver of right to appeal; considering that Plaintiff believes that he did not admit to probable cause at his VOP hearing, (Morgan Dep., 56:9-17), it is clear that he did not understand the consequences of waiving his right to appeal.

Under New York law, appellate review plays a critical role in safeguarding the correctness of judgments ... and collateral estoppel cannot be applied without first considering the availability of such review." Johnson v. Watkins, 101 F.3d 792, 795 (2d Cir. 1996). "Hence, collateral estoppel will not bar reconsideration of an issue if there is an inability to obtain review or there has been no review, even though an appeal was taken." Id. Without Plaintiff having been apprised of the fact that he had the right to appeal any finding of probable cause at his VOP hearing, any determination by that court would have been *de facto* beyond the scope of judicial review and, therefore by definition, not final. Consequently, it cannot be said that Plaintiff had a full and fair opportunity to litigate the issue of probable cause at his VOP hearing, as he faced at that hearing "procedural limitations that would not be present at a later hearing[.]" Golino v. City of New Haven, 950 F.2d 864, 869 (2d Cir. 1991).

Therefore, based on the foregoing, it is clear that Plaintiff did not have a full and fair opportunity to litigate the issue of probable cause at his VOP hearing. To wit, Plaintiff was incarcerated for over *four (4) months* off the strength of a preliminary finding that he violated probation, which had the effect of coercing Plaintiff into taking the Court's deal; during that incarceration, his first child was born and he was unable to be a part of that joyous occasion, adding to the coercive pressure upon Plaintiff's shoulders; Plaintiff's VOP hearing occurred at a summary proceeding without a jury, which did not offer the same procedural safeguards that a criminal trial would offer; and Plaintiff did not know that he would have had the right to appeal any determination of the court at his VOP hearing, and the trial court did not advise Plaintiff of same in violation of the precedent set by People v. Seaberg, 74 N.Y. 2d 1 (N.Y. Ct. App. 1989). As noted, "collateral estoppel will not bar reconsideration of an issue if there is an inability to obtain review." Johnson, 101 F.3d at 795. Consequently, collateral estoppel cannot apply to bar Plaintiff from contesting probable cause in this case; therefore, defendants' motion must be denied.

## C.     Judicial Estoppel Does Not Apply Here To Bar Litigation of Probable Cause Issue

"A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir.1999)(internal citations omitted). The Supreme Court has recognized that the purpose of the doctrine is to protect the integrity of the judicial process. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). "Because the rule is intended to prevent improper use of judicial machinery ... judicial estoppel is an equitable doctrine invoked by a court at its discretion." Id. Furthermore, "[b]ecause the rule looks toward cold manipulation and not an unthinking or confused blunder, [judicial estoppel] has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake." Johnson Service Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973).

Here, Plaintiff did not take a position in another proceeding that is inconsistent to a position taken by Plaintiff in this proceeding; consequently, judicial estoppel does not apply to bar Plaintiff from litigating the issue of probable cause as to his July 11, 2014 arrest. As noted in Point I-B(i), *supra*, while Plaintiff

did admit to a VOP specification of probable cause to arrest, at no point in Plaintiff's VOP hearing was it indicated that he pled guilty to probable cause to arrest under the two provisions of the penal law pursuant to which Plaintiff was charged, to wit, N.Y.P.L. §§ 220.44 and 220.39, nor the provision under which he was arrested § 220.31 . (See generally VOP Trans; Pre-Arraignment Report.) Therefore, Plaintiff's position that there was not probable cause for his July 11, 2014 arrests under N.Y.P.L. §§ 220.44, 220.39, and 220.31 is not inconsistent with his plea at his VOP hearing.

Defendants' reliance on Hinds v. City of New York, 768 F.Supp.2d 512 (S.D.N.Y. 2010) is inapposite and is illustrative of the above. In Hinds, the plaintiff had been arrested for weapons possession when he was fifteen (15) years-old. At a hearing in Family Court, plaintiff testified that he had obtained the subject weapon from a classmate at school and the Family Court subsequently found against plaintiff. The Appellate Division overturned the Family Court's ruling on the ground that the officer who stopped plaintiff and discovered the weapon did not have "reasonable suspicion" to effect the *Terry* stop. Plaintiff then commenced a Section 1983 action in the Southern District alleging, *inter alia*, false arrest. The Southern District, in dismissing plaintiff's false arrest claim, stated "Hinds' denial that he possessed the gun is clearly inconsistent with his prior **testimony** before the Family Court that he received the gun from a classmate." Hinds, 786 F.Supp2d at 515 (emphasis added). Here, Plaintiff did not testify at his VOP hearing that there was probable cause to arrest him under N.Y.P.L. §§ 220.44, 220.39, and 220.31.

Even if this Court were to determine that Plaintiff did in fact take a position in this action contrary to one taken at his VOP hearing on December 19, 2014, judicial estoppel should still not because the doctrine is inapplicable where "plaintiff's assertions were based on fraud, **inadvertence**, or mistake." Johnson Service Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973)(emphasis added). Plaintiff testified at his deposition that he did not plead to a finding of probable cause to arrest at his VOP hearing, but rather that he "took a VOP due to ... supposedly not showing up to a job fair." (Morgan Dep., 56:9-17.) Clearly, then, if this Court finds that Plaintiff has taken a position contrary to one taken at his VOP hearing, it should also find that his assertion at the VOP hearing was made inadvertently as Plaintiff clearly did not understand the proceedings before him.

As Plaintiff did not take "an inconsistent position in a prior proceeding", <u>Mitchell v. Washingtonville Cent. Sch. Dist.</u>, 190 F.3d 1, 6 (2d Cir.1999) (internal citations omitted), Judicial Estoppel is not applicable here to bar Plaintiff from litigating the issue of probable cause as to his July 11, 2014 arrest. Accordingly, defendants' motion as to Plaintiff's false arrest claim must be denied.

**D.      Material Issues Of Fact Remain As To Whether Defendants Had Probable Cause To Arrest Plaintiff On July 11, 2014**

Summary judgment should only be granted when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. <u>Redd v. N.Y. Div. of Parole</u>, 678 F.3d 166, 174 (2d Cir. 2012). Defendants claim that "Plaintiff's false arrest claim fails [because] … defendants have established probable cause for plaintiff's arrest based on the personal observations of defendant … Ajesulas." (D's Mem. of Law, p. 16.) This probable cause is based on Ajesulas's assertion that he and "his partner, … Lisa Skladel, [] both witnessed plaintiff … Brent Martin engage in a hand-to-hand [drug] exchange." (D's Mem. of Law, p. 16.)

However, Plaintiff contests this version of events, as he stated at his deposition that he and non-party Brent Martin did not interact on the date of Plaintiff's arrest. (Plaintiff's Rule 56.1 (P56.1, ¶¶ 2 & 17; Morgan Dep, pp: 74:14—80:13.) Moreover, Ajesulas's assertions themselves create questions of fact. Ajesulas testified at his deposition that he did not receive any training as to what constituted probable cause while in the Police Academy. (Excerpts from the Transcript of the Deposition of Oldson Ajesulas ("Ajesulas Dep."), dated May 25, 2016, **_Exhibit F_**, pp: 9:21—10:17.) Prior to July 11, 2014, Ajesulas had made over one hundred (100) drug arrests, though he could recall only one in which he saw an actual exchange of money or narcotics. (Ajesulas Dep., pp. 15:8—21:19.) Consequently, Ajesulas made over one hundred (100) drug arrests, prior to July 11, 2014, without having actually witnessed an exchange of money or narcotics, all without training as to what constituted probable cause.

On July 11, 2014, Ajesulas and his partner were parked in their squad car on the corner of Jewell Avenue and 161st Street in the County of Queens, City and State of New York, when they first noticed Plaintiff and Brent Martin. (Ajesulas Dep., p. 40:8-15.) Per Ajesulas's Memo Book from the date in

question, he observed Plaintiff and Brent Martin partake in a "possible drug transaction" behind "65-96 Parsons Boulevard." (Memo Book, D26(A), *Exhibit D*.) Ajesulas confirmed at his deposition that he had written down 65-96 Parsons Boulevard as the location of the drug transaction in his memo book. (Ajesulas Dep., p. 56:18-23.) It seems that Ajesulas, while parked on the corner of Jewell Avenue and 161st Street, would be able to see anything occurring in front of or behind 65-96 Parsons Boulevard. (Map, *Exhibit K*.)

Alarmingly, the criminal complaint states that the drug transaction occurred at 65-92 160th Street in the County of Queens, City and State of New York. (Criminal Complaint.) Further, the Omniform System Complaint states that the transaction occurred in front of 70-29 Parsons Boulevard. (Omniform System – Complaints, D26(A), *Exhibit D*.) The complaint report worksheet states that Ajesulas observed Plaintiff engage in a drug transaction with Brent Martin **inside of 70-29 Parsons Boulevard**. (Complaint Report Worksheet, D26(A), *Exhibit D*.)

Ajesulas testified that the correct address of where the alleged transaction took place was 67-46 161st Street in the County of Queens, City and State of New York. (Ajesulas Dep., 58:17—59:21.) Ajesulas initially testified at his deposition that he did not return to that address to conduct an investigation or to ensure whether he had logged his arrest of Plaintiff correctly. (Ajesulas Dep., 70:3-24.) Still, later in his deposition, Ajesulas reversed course and indicated that he did in fact return to the scene of the alleged transaction to verify the correct addres—it was at that point where Ajesulas allegedly learned that his paperwork was riddled with errors. (Ajesulas Dep., 130:2—133:19.) Nonetheless, Ajesulas failed to correct his official police paperwork, including the criminal complaint, or note his error anywhere. (Ajesulas Dep., 129:3-22.) Further, despite conducting this investigation while on duty, Ajesulas neglected to log same in his memo book, despite having to account for his time while on duty. (Ajesulas Dep., 134:2—20.) As a result of his investigation, Ajesulas stated that he saw security cameras at the location of the drug transaction; shockingly, Ajesulas did not seek to obtain the security footage for purposes of the prosecution of Plaintiff. According to Ajesulas, the Assistant District Attorney who was handling the criminal case against Plaintiff did not know how to obtain said footage. (Ajesulas Dep., 134:21—136:7.)

Ajesulas's testimony that he observed Plaintiff engage in a drug transaction with Brent Martin is contradicted by Plaintiff's assertion that he did not interact with Brent Martin; further, Ajeuslas's own testimony and police paperwork are contradictory as to where he saw the alleged drug transaction—that fact, coupled with Ajesulas's failure to subsequently correct his error upon discovering same, leads to the inference that Ajesulas DID NOT witness a drug transaction between Plaintiff and Brent Martin. Accordingly, there is clearly an issue of fact as to whether or not Plaintiff and Brent Martin interacted on the date of Plaintiff's arrest; if they did not, it is impossible for defendant Oldson Ajesulas's version of events to be true. In deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). Thus, "credibility assessments, choices between conflicting versions of events and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). Accordingly, it is clear that issues of fact remain as to whether or not defendants had probable cause to arrest Plaintiff on July 11, 2014, as Plaintiff and defendant Oldson Ajesulas present conflicting versions of events.

**E.  Plaintiff's False Arrest Claim Is Not Precluded By Heck v. Humphrey**

Defendants argue that, based upon the precedent set forth in Heck v. Humphrey, 512 U.S. 477, 484 (1994), Plaintiff's action must be dismissed because a decision in Plaintiff's favor would necessarily render invalid the outcome of Plaintiff's VOP hearing. (D's Mem. of Law, p. 17.)

However, as noted Point I-B(i), *supra*, while Plaintiff did admit to a VOP specification of probable cause to arrest, at no point in Plaintiff's VOP hearing was it indicated that he pled guilty to probable cause to arrest under the two provisions of the penal law pursuant to which Plaintiff was charged, to wit, N.Y.P.L. §§ 220.44 and 220.39, nor the provision pursuant to which he was arrested, § 220.31. (See generally VOP Trans; Pre-Arraignment Report.) Therefore, an outcome favorable to Plaintiff in this action would not necessarily render invalid the outcome of the VOP hearing because Plaintiff did not plead to probable cause

to arrest under N.Y.P.L. §§ 220.44, 220.39, and 220.31. Therefore, <u>Heck</u>, 512 U.S. 477, does not apply here to preclude Plaintiff's cause of action for false arrest and defendants' motion must be denied.

**POINT II—THE MALICIOUS ABUSE OF PROCESS CLAIM SHOULD NOT BE DISMISSED**

Defendants argue that Plaintiff's abuse of process claim "fails in the first instance because [Plaintiff] has failed to establish an 'improper cause'." (D's Mem. of Law, p. 18.) Per defendants, "neither of [Plaintiff's] purported [collateral] objectives, to cover-up his unconstitutional racial-profiling or to meet arrest quotas ... constitute a collateral purpose beyond or in addition to his criminal prosecution." (D's Mem. of Law, pp. 18-19 (internal quotations and citations omitted).)

"The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose—that is, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." <u>Douglas v. City of New York</u>, 595 F.Supp.2d 333, 344 (S.D.N.Y. 2009). Here, it is Plaintiff "claims" that the collateral purpose behind defendants' arrest of Plaintiff was to meet arrest quotas, which is certainly "beyond [and] in addition to his criminal prosecution." <u>Douglas</u>, 595 F.Supp.2d at 344. This is supported by Ajesulas's assertion that prior to July 11, 2014, he made over 100 drug arrests without ever seeing an exchange of money or narcotics. (Ajesulas Dep., pp. 15:8—21:19.)

Further, defendants argue that "because Plaintiff is collaterally estopped from asserting Ajesulas lacked probable cause for his arrest, he cannot rely on a lack of probable cause as an inference that Ajesulas acted with a collateral objective outside the legitimate ends of the legal process." (D's Mem. of Law, p. 19.) However, as has been made clear in Point I-B(i) and I-D, *supra*, defendants did not have probable cause to arrest Plaintiff on July 11, 2014, nor did Plaintiff admit to probable cause to arrest under the sections of the penal law pursuant to which he was arrested. (<u>See</u> Point I-B(i) and I-D, *supra*.) "[A]lthough abuse of process ... does not require that probable cause be lacking ... a lack of probable cause creates an inference of malice, supporting the **collateral objective** element of this claim." <u>Savino v. City of New York</u>, 331 F.3d 63, 76 (2d Cir. 2003)(internal quotations and citations omitted). Accordingly, the

absence of probable cause here leads to the inference that defendants acted with a collateral objective, namely, to cover-up racial-profiling or to meet arrest quotas.

Defendants further argue that they "lacked intent to do harm without excuse or justification, **because there was probable cause for plaintiff's arrest and prosecution**." (D's Mem. of Law, p. 19.) As has been made clear in Point I-B(i) and I-D, *supra*, Plaintiff did not admit to probable cause to arrest under the sections of the penal law pursuant to which he was arrested on July 11, 2014; further, questions of fact exist as to whether defendants actually have probable cause to arrest Plaintiff under the charges pursuant to which he was arrested on July 11, 2014. (See Point I-B(i) and I-D.) Therefore, Plaintiff's malicious abuse of process claim should not be dismissed and defendants' motion for summary judgment as to that cause of action must be denied.

## POINT III—THE MALICIOUS PROSECUTION CLAIM SHOULD NOT BE DISMISSED

To properly make a claim for malicious prosecution under New York law, a plaintiff must: "First … prove that the defendant initiated a criminal proceeding. Second, the proceeding must have been terminated favorably to the plaintiff. Third, the plaintiff must prove that there was no probable cause for the criminal charge. Finally, the defendant must have acted maliciously." Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).

There is no question here that Plaintiff has proven the first two factors. Defendant, City of New York, initiated the criminal prosecution of Plaintiff stemming from an arrest that occurred on July 11, 2014 based on the sworn statement of Ajesulas. (Criminal Complaint, Sworn to by Defendant Oldson Ajesulas on July 12, 2014, D26(A), *Exhibit D*.) This criminal proceeding terminated favorably to the Plaintiff when the charges against him stemming from the July 11, 2014 arrest were dismissed on motion of the District Attorney's office. (Certificate of Disposition, Plaintiff's Rule 26(A) Initial Disclosures, *Exhibit G*.)

Defendants argue that "because – by plaintiff's own admission – probable cause existed for his arrest, he cannot make out the third element of a malicious prosecution claim – an absence of probable cause to believe the proceedings would succeed." (D's Mem. of Law, p. 20.) However, as has been made clear in Point I-B(i) and I-D, *supra*, defendants did not have probable cause to arrest Plaintiff on July 11,

2014, nor did Plaintiff admit to probable cause to arrest under the sections of the penal law pursuant to which he was arrested. (See Point I-B(i) and I-D, *supra*.) Plaintiff contests Defendant Ajesulas's version of events, as he stated at his deposition that he and non-party Brent Martin did not interact on the date of Plaintiff's arrest, meaning that questions of fact remain as to whether probable cause existed for Plaintiff's arrest on July 11, 2014. (Plaintiff's Rule 56.1 (P56.1, ¶¶ 2 & 17; Morgan Dep, pp: 74:14—80:13.) Further, Ajeuslas's own testimony and police paperwork are contradictory as to where he saw the alleged drug transaction—that fact, coupled with Ajesulas's failure to subsequently correct his error upon discovering same, leads to the inference that Ajesulas DID NOT witness a drug transaction between Plaintiff and Brent Martin. With respect to defendants' argument as to "plaintiff's own admission", at no point in Plaintiff's VOP hearing was it indicated that he pled guilty to probable cause to arrest under the provision of the penal law pursuant to which he was initially arrested. Thus, there was never an adjudication of Plaintiff's guilt on the N.Y.P.L. §§ 220.44, 220.39 and 220.31 charges. Since the merits of the narcotics charges were never addressed, "the alleged constitutional violations were not necessarily answered by the admission." Powers v. Coe, 728 F.2d 97, 102 (2d Cir. 1984).

Defendants further argue that due to the existence of probable cause, Plaintiff cannot establish that the proceeding against him was brought with actual malice. (D's Mem. of Law, p. 20.) However, as noted above, probable cause did not exist for Plaintiff's July 11, 2014 arrest; further, the inconsistencies between Ajesulas's deposition transcript and his police paperwork, coupled with his failure to correct those inconsistencies when he learned of them, lead to the inference that Ajesulas fabricated the entire transaction between Plaintiff and Brent Martin. This supports Plaintiff's position that the malice element of his malicious prosecution claim is established by the fact that Defendant Ajesulas arrested Plaintiff to meet an unconstitutional arrest quota. Accordingly, as questions of fact remain as to whether probable cause existed for Plaintiff's July 11, 2014 arrest, Defendants' motion must be denied.

**POINT IV—PLAINTIFF'S DENIAL OF FAIR TRIAL CLAIM SHOULD NOT BE DISMISSED**

Defendants' entire argument for dismissal of Plaintiff's Denial of Right to a Fair Trial Claim is premised on there actually being probable cause for Plaintiff's arrest, whether that probable cause exists

because Plaintiff admitted to it or because of Ajesulas's observations. (D's Mem. of Law, pp. 20-1.) Logically, then, if there was no probable cause for Plaintiff's arrest, defendants' motion as to this claim must fail. As has been made clear in Point I-B(i) and I-D, *supra*, defendants did not have probable cause to arrest Plaintiff on July 11, 2014, nor did Plaintiff admit to probable cause to arrest under the sections of the penal law pursuant to which he was arrested. (See Point I-B(i) and I-D, *supra*.) Thus, Defendants' motion as to Plaintiff's denial of right to a fair trial claim must be denied.

### POINT V—EVIDENCE IN THE RECORD SUPPORTS THE SUPERVISORY LIABILITY CLAIM AND DIVESTS ROSARIO OF THE PROTECTION OF THE FELLOW OFFICER RULE

After arresting Brent Martin, Ajesulas inexplicably failed to report his arrest via radio, despite the fact that it is New York City Police Department protocol for officers to do so. (Ajesulas Dep., 113:13-16.) Ajesulas also did not report over radio his arrest of Plaintiff. (Ajesulas Dep., 116:3-6.) Ajesulas did, however, call his supervisor, Rosario, over his personal cellphone to report this arrest—Ajesulas was unable to explain this break in protocol, nor why his supervisor acquiesced with same. (Ajesulas Dep., 116:7—117:6.) Further, Rosario verified Ajesulas's arrest of Plaintiff despite the abundant inconsistencies in Ajesulas's paperwork.

The Second Circuit has held that "a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Further, "a supervisor may be liable for failing to screen or otherwise inquire about his subordinates or into their actions." Id. (internal citations omitted).

Rosario displayed deliberate indifference in verifying Ajesulas's arrest of Plaintiff, which caused Plaintiff to be remanded for a violation of probation. Further, Ajesulas has already been a defendant in an action wherein he was accused of providing false information to the Queens District Attorney's office. Kendelle Stevenson v. Police Officer Oldson Ajesulas, 14-CV-3144 (MKB)(CLP) (E.D.N.Y.). This

supports the fact that Rosario failed to inquire into Ajesulas's actions, despite notice that Ajesulas had been accused of falsifying information.

Defendants argue that Rosario is protected from liability by the fellow officer's rule. Where the fellow officer's rule applies, the issue is whether the officer claiming its protection acted reasonably. Golphin v. City of New York, 2011 U.S. Dist. LEXIS 106272, at 4 (S.D.N.Y. Sep. 19, 2011). There is no question that Rosario did not act reasonably in verifying the arrest of Plaintiff because of the inconsistencies in Ajesulas's testimony. Further, he knew or should have known that Ajesulas had previously been accused of falsifying complaints. Stevenson, 14-CV-3144 (E.D.N.Y.).

As Plaintiff has presented sufficient evidence to support a supervisory liability claim against Rosario, and as defendants have failed to even address that evidence In their moving papers, defendants' motion as to Plaintiff's supervisory liability claim must be denied.

## POINT VI—RECORD SUPPORTS PLAINTIFF'S MUNICPAL LIABILITY CAUSE OF ACTION

"A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was ... the person who subjected, or caused him to be subjected, to the deprivation of his constitutional rights, 42 U.S.C. § 1983." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)(internal quotations and alteration omitted). "[T]his means that an official policy or custom must be shown to be the cause of the deprivation of constitutional rights." Id. This element of causation has two components; first, "[t]he plaintiff must ... prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." Id. Second, "the plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights." Id.

### A.      Proof of Policy or Custom

With respect to proof of policy or custom, the Supreme Court of the United States has held that:

> A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for § 1983 purposes, but the failure to train must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. ... Deliberate indifference in  this  context  requires  proof  that  city  policymakers

disregarded the known or obvious consequence that a particular omission in their training program would cause city employees to violate … constitutional rights.

Connick v. Thompson, 563 U.S. 51 (2011)(internal citations, quotations and alterations omitted).  Thus, a plaintiff must do more than simply state that a municipal policy or custom exists."  Santos v. New York City, 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012).  "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists."  Id.

Here, Plaintiff has presented sufficient evidence to create, at the very least, an inference that there exists in the New York City Police Department "practices so persistent and widespread as to practically have the force of law."  Connick, 563 U.S. at 51.  Moreover, based on the City of New York's own studies, it is clear that there exists in the New York City Police Department "deliberate indifference to the rights of persons with whom untrained employees come into contact [such that it can be circumstantially inferred that] … city policymakers disregarded the known or obvious consequence that a particular omission in the training program would cause city employees to violate citizens' constitutional rights."  Id.

Defendant argues that "notwithstanding the pages of boilerplate municipal liability … allegations in the complaint, plaintiff has failed to adduce any evidence to support a Monell claim."  (D's Mem. of Law, p. 23.)  However, Plaintiff submits the Mollen Commission report, which stated that:

> Police perjury and falsification of official records is a serious problem facing the Department and the criminal justice system – largely because it is often a tangled web that officers eave to cover for the other underlying acts of corruption or wrongdoing … Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors.  Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.

(Mollen Commission Report, dated July 7, 1994, *Exhibit H*.)  After the release of the Mollen Commision report, Mayor Rudolph W. Giuliani, on February 27, 1995, created the Commission to Combat Police Corruption ("CCPC").  A report issued by that commission in 2001 stated that the New York City Police Department was unlikely to terminate an officer for providing false statements in non-testimonial settings. (CCPC Report, dated December, 2001, *Exhibit I*, p. 74.)  Per that report, "nontestimonial contexts" include

"false statements made to department or other investigative offices that were not made under oath or in P.G. interviews, **falsifying police records** or other business records, **falsely reporting crimes**, committing or inducing the commission of forgery, or engaging in various types of fraud." (Id.) Therefore, as of 2001, a government commission determined that officers such as Ajesulas who falsify police records were not typically reprimanded by their superiors. As noted in the Mollen Commission, this failure is systemic.

Per the CCPC's November, 2015 report, issued after the accrual of Plaintiff's claims herein:

> The Commission also disagreed with the penalties in a significant number of cases in the false statement category. After reviewing this report, **the Department explained that some of the misconduct, while serious, did not rise to the level of termination-worthy false statements or the Department lacked sufficient evidence to prove that the subject officer made a false statement**. The Commission considers the making of a false statement by an officer in an official capacity to be an extremely serious offense and deserving of termination unless there are exceptional circumstances to justify a less severe penalty.

(Commission to Combat Police Corruption, dated November, 2015, *Exhibit J*, p. 61.)

That the Commission to Combat Police Corruption has a category for false statements in each of its reports, dating back to 1996, is clear evidence to create, at the very least, an inference that there exists in the New York City Police Department "practices so persistent and widespread [with respect to falsifying criminal complaints] as to practically have the force of law." Connick, 563 U.S. at 51. Police officers perjure themselves at such a rate that the falsifying of criminal complaints rises to that level of "policy and custom" envisioned by the Supreme Court in Monell v. Dep't. of Soc. Serv., 436 U.S. 658 (1978).

Further, as noted above, a "local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for § 1983 purposes, but the failure to train must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Connick, 563 U.S. at 51. Plaintiff alleged in ¶¶ 41, 42 and 43 of his Complaint that his injuries were caused by a failure on the part of the City of New York, through its New York City Police Department, to properly train its employees. "[T]o establish deliberate indifference for a failure train or supervise claim, the plaintiff must show (1) that a policymaker

knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the ... employee will frequently cause the deprivation of ... constitutional rights." <u>Santos</u>, 847 F.Supp.2d at 576.

Here, based on the commission reports referenced above, it is clear that policymakers within the New York City Police Department know "to a moral certainty" that police officers will confront situations in which they can falsify criminal complaints; clearly, there is a history of New York City Police Department employees mishandling such situations; and, irrefutably, the falsifying of criminal complaints will necessarily implicate the Fourth, Fifth and Sixth Amendments to the United States Constitution. Therefore, it is clear that Plaintiff has presented sufficient evidence to establish "deliberate indifference" on the part of the City of New York with respect to the falsifying of criminal complaints.

i.      **Admissibility of Mollen and CCPC Reports**

The referenced reports are admissible to prove the truth of the matter asserted under Fed.R.E 803(8)(A) because each report sets out (i) the activities performed by the Commission, (ii) the reports constitute matters observed while under a legal duty to report, and (iii) the investigations were legally authorized. Further, the Reports are self-authenticating under Fed.R.E 902(5) because they were issued by public authorities commissioned by the City of New York itself.

B.      **Causal Connection Between Policy and Deprivation of Plaintiff's Constitutional Rights**

Ajeuslas's own testimony and police paperwork are contradictory as to where he saw the alleged drug transaction—that fact, coupled with Ajesulas's failure to subsequently correct his error upon discovering same, leads to the inference that Ajesulas DID NOT witness a drug transaction between Plaintiff and Brent Martin and did fabricate the alleged transaction between Plaintiff and Brent Martin.

After arresting Brent Martin, Ajesulas failed to report his arrest via radio, despite the fact that it is New York City Police Department protocol for officers to do so. (Ajesulas Dep., 113:13-16.) Ajesulas also did not report over radio his arrest of Plaintiff. (Ajesulas Dep., 116:3-6.) Ajesulas did, however, call

his supervisor, Rosario, over his personal cellphone to report this arrest—Ajesulas was unable to explain this break in protocol, nor why his supervisor acquiesced with same. (Ajesulas Dep., 116:7—117:6.)

Based on the foregoing, it is clear that the City of New York's policy and custom of deliberate indifference as to the falsifying of criminal complaints by employees of the New York City Police Department caused Plaintiff to suffer violations of his constitutional rights. Notably, Ajesulas falsified his criminal complaint. The record, including Ajesulas's deposition testimony and Defendants' Rule 26(A) Initial Disclosures, conclusively establish that Ajesulas listed **THREE** separate addresses as the location of the alleged drug transaction for which he arrested Plaintiff. Ajesulas's supervisor, Rosario, verified this arrest despite the abundant inconsistencies in Ajesulas's paperwork. Upon discovering the errors in his paperwork, Ajesulas did nothing to correct that error. It is difficult to believe that Ajesulas saw drug transaction between Plaintiff and Brent Martin because upon learning of the errors in his paperwork, he did nothing to notify the district attorney's office or to correct his paperwork, and he also refused to document his subsequent investigation of the transaction, which conclusively establishes that Ajesulas intentionally falsified the criminal complaint and deprived Plaintiff of his constitutional rights.

It is blackletter law that in deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996). Thus, "credibility assessments, choices between conflicting versions of events and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir. 1991).

What we have here is an issue of credibility. It is not for this Honorable Court to determine if the errors in Ajesulas's paperwork were accidental or intentional. It must suffice that Plaintiff has presented sufficient evidence to establish, at least circumstantially, a policy and custom of deliberate indifference to the falsifying of criminal complaints, and that such policy or custom resulted in a deprivation of Plaintiff's

constitutional rights as Ajesulas's own supervisor, and the department in general, turned a blind eye to such falsifications. Pugh v. City of New York, No. 01-cv-0129 (ILG), 2002 U.S. Dist. LEXIS 2976, at 9 (E.D.N.Y. Jan. 15, 2002). Accordingly, defendants' motion must be denied.

### POINT VII—ROSARIO AND AJESULAS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997). "Even if a clearly established statutory or constitutional right is violated, qualified immunity is nonetheless a defense if the officers' unlawful actions were *objectively reasonable*." Id.

With respect to Ajesulas, his own testimony and police paperwork are contradictory as to where he saw the alleged drug transaction—that fact, coupled with Ajesulas's failure to subsequently correct his error upon discovering same, leads to the inference that Ajesulas DID NOT witness a drug transaction between Plaintiff and Brent Martin. Accordingly, there is clearly an issue of fact as to whether or not Plaintiff and Brent Martin interacted on the date of Plaintiff's arrest; if they did not, it is impossible for defendant Oldson Ajesulas's "actions" to be "objectively reasonable" as he fabricated information. With respect to Rosario, there is no question that he did not act reasonably in verifying the arrest of Plaintiff because of the inconsistencies in Ajesulas's testimony. Further, he knew or should have known that Ajesulas had previously been accused of falsifying complaints. Stevenson, 14-CV-3144 (MKB)(CLP) (E.D.N.Y.). Accordingly, Ajesulas and Rosario are not entitled to qualified immunity.

### CONCLUSION

For the foregoing reasons, it is irrefutable that questions of fact exist, *inter alia*, as to whether there was probable cause for Plaintiff's arrest. Therefore, defendants' motion must be denied.

Dated: Brooklyn, New York
      February 6, 2017

                                                   /s/
                                 **David J. Hernandez & Associates**
                                 **By: David J. Hernandez, Esq.**
                                 26 Court Street – Suite 2707
                                 Brooklyn, New York 11242