UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
KADEEM MORGAN,

        Plaintiff,

15 CV 3899 (SJ) (ST)

MEMORANDUM
AND ORDER

-against-

THE CITY OF NEW YORK, et al.

        Defendants.
----------------------------------------------------X

APPEARANCES
DAVID J. HERNANDEZ & ASSOCIATES
26 Court Street
Suite 2707
Brooklyn, NY 11242
By:   David J. Hernandez
       Jeff Alan Chabrowe
*Attorneys for Plaintiff*

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007
By:   Zachary W. Carter
       Karl J. Ashanti
*Attorneys for Defendants*

1

JOHNSON, Senior District Judge:

Plaintiff Kadeem Morgan ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 1983, 1981 and 1988 against defendants, the City of New York, New York City Police Department Officer Oldson Ajesulas, and New York City Police Department Sergeant Jonathan Rosario (collectively, "Defendants"), alleging violations of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. Presently before the Court is Defendants' Motion for Summary Judgment. For the reasons stated herein, Defendants' motion is granted in its entirety.

## I. BACKGROUND

On July 11, 2014, Defendant Ajesulas arrested Plaintiff after he allegedly observed him selling crack cocaine. Plaintiff was arrested for a violation of New York Penal Law § 220.31 (Criminal Sale of a Controlled Substance in the Fifth Degree). Plaintiff was formally charged with violations of N.Y.P.L. §§ 220.44 (Criminal Sale of a Controlled Substance in or near School Grounds) and 220.39 (Criminal Sale of a Controlled Substance in the Third Degree). At the time of his arrest, Plaintiff was serving five-years' probation for a prior conviction. At his arraignment, Plaintiff was released on his own recognizance.

On August 1, 2014, the return date, Plaintiff was formally charged with violating the terms of his probation and remanded. At a hearing on December 19, 2014 (the "VOP hearing"), Plaintiff pleaded guilty to the violation and specifically

2

admitted that there was probable cause for his arrest. The court sentenced Plaintiff to ten-months' incarceration, and the Queens County District Attorney dropped the criminal charges. Plaintiff then commenced the instant action.

## II. DISCUSSION

### A. Summary Judgment Standard

A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

### B. Plaintiff's Claim for False Arrest

A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York State law. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). The existence of probable cause to arrest constitutes justification and is a complete defense to an action for constitutional- or state-based false arrest claims. See, e.g., Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014). Thus, Plaintiff's false arrest claim necessarily fails as a matter of law if he is estopped from arguing that his July 11, 2014 arrest was made without probable cause.

Summary judgment is appropriate under the doctrine of collateral estoppel "when all the material issues of fact in a pending action have been actually and

3

necessarily resolved in a prior proceeding," State of New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir. 2000). To warrant summary judgment on the basis of collateral estoppel, the Court must find that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir. 1999). Since Defendants' contention stems from a state violation of probation hearing, New York law governs. See Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Each of the components of collateral estoppel is addressed in turn.

    a. Identity of Issues

Plaintiff argues that there is no identity of issues because he pleaded guilty to different violations of the Penal Law than the one under which he was arrested. Plaintiff's argument is without merit. In looking at the identity of the issues, it is of no import whether Plaintiff pleaded guilty to charges other than those for which he was arrested. In a section 1983 claim for false arrest, the relevant question is whether an objectively reasonable officer, knowing the facts known to Defendants at the time of arrest, was warranted in the belief that Plaintiff had committed a crime. See Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). Further, because probable cause is evaluated under an objective standard, it need not be "predicated

upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer[.]" Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). Rather, the inquiry in a false arrest claim is on "the validity of the arrest, and not on the validity of each charge." Id. at 154 (emphasis in original).

Moreover, a guilty plea to any crime stemming from the allegedly false arrest is sufficient to defeat a section 1983 false arrest claim. See, e.g., Wiltshire v. Wanderman, 2015 WL 4164808, at *2-3 (S.D.N.Y. July 10, 2015); Horvath v. City of New York, 2015 WL 1757759, at *3 (E.D.N.Y. Apr. 17, 2015); Houston v. City of New York, 2013 WL 1310554, at *4 (E.D.N.Y. Mar. 28, 2013); Sealey v. Fishkin, 1998 WL 1021470, at *4 (E.D.N.Y. Dec. 2, 1998).

Thus, Plaintiff's guilty plea alone is conclusive evidence that there was probable cause for his arrest, regardless of the fact that Plaintiff also stipulated that there was probable cause for his arrest as a part of his plea. The issue of probable cause stemming from the arrest at issue in Plaintiff's VOP hearing, therefore, is the precise issue that Defendants seek to bar Plaintiff from relitigating.

### b. Full and Fair Opportunity to Litigate

In determining whether Plaintiff had a full and fair opportunity to contest the probable cause issue at his VOP hearing, New York law requires that the Court consider the following factors: the nature of the forum, the importance of the claim in the prior litigation, the incentive to litigate, the competence of counsel, the

5

availability of new evidence, the differences in applicable law, and the foreseeability of future litigation. Banks v. Person, 49 F. Supp. 2d 119, 128 (E.D.N.Y. 1999); see also Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001) (citing New York law finding the same).

As to the nature of the forum, the burden of proof at a violation of probation hearing—preponderance of the evidence—is the same burden of proof as in the instant civil case. Banks, 49 F. Supp. 2d at 128–29. Moreover, Plaintiff was represented by counsel at his VOP hearing that took place before a judge, and had the opportunity to both call his own witnesses and cross-examine adverse witnesses. With respect to Plaintiff's incentive to litigate during his VOP hearing, the Court finds that the incentive for Plaintiff to litigate at the VOP hearing was high because liberty was at stake. See, e.g., Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003). The fact that Plaintiff chose to plead and did not contest the proceedings is immaterial—the "opportunity was clearly there." Id. These factors militate in favor of a finding of a full and fair opportunity to litigate.

Plaintiff next argues that his plea was involuntary, and as a result, he was deprived of a full and fair opportunity to litigate. In support, Plaintiff states that he missed the birth of his child while incarcerated awaiting his VOP hearing. This argument is without merit.

Finally, Plaintiff's claim that he did not have a full and fair opportunity to litigate because he did not understand the legal consequences of his admission to

6

probable cause for his arrest is belied by the fact that he was represented by competent legal counsel at his VOP hearing who was charged with advising Plaintiff of his rights. Indeed, the on-record exchanges both between Plaintiff's counsel and the court, and between the court and Plaintiff demonstrate that Plaintiff's counsel conferred with him about the court's proffered plea of ten-months' incarceration and stipulation of probable cause for arrest, and that Plaintiff attested that he understood the terms of the plea agreement. Moreover, as noted, Plaintiff's guilty plea itself is sufficient to estop Plaintiff from relitigating the issue of probable cause, and as discussed, the Court finds that Plaintiff made that plea voluntarily.

Based on the foregoing, the Court finds that Plaintiff had a full and fair opportunity to litigate the issue of probable cause as to his arrest.

### c. Decisiveness of the Issue

Finally, an issue is decisive if "it would prove or disprove . . . an essential element of . . . the claims set forth in the complaint." Curry, 316 F.3d at 332. Because the existence of probable cause is a complete defense to a false arrest claim, the issue of probable cause as to Plaintiff's July 2014 arrest is decisive of the current action. The Court therefore finds that Plaintiff is collaterally estopped from relitigating the issue of probable cause as to his July 2014 arrest. As a result,

7

Plaintiff's false arrest claim fails as a matter of law, and summary judgment is granted as to Plaintiff's false arrest claim.[1]

## C. Plaintiff's Malicious Abuse of Process, Malicious Prosecution, Fair Trial and Equal Protection Claims

Because, as discussed, Plaintiff is collaterally estopped from arguing that there was no probable cause for his arrest, his malicious abuse of process, malicious prosecution, fair trial and equal protection claims fail as a matter of law in this case. See Sullivan v. City of New York, 690 F. App'x 63, 67 (2d Cir. 2017) ("The summary judgment submissions revealed that the officers had probable cause to arrest [plaintiff], which negated [plaintiff's] claims of false arrest, malicious prosecution, false imprisonment, and abuse of process."); Struthers v. City of New York, 2013 WL 2390721, at *12 n.18 (E.D.N.Y. May 31, 2013) (finding that where a fair trial and malicious prosecution claim are predicated on the same series of events, "the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together"); Mesa v. City of New York, 2013 WL 31002, at *25 (S.D.N.Y. Jan.

---

[1] Because Plaintiff is collaterally estopped from arguing that there was not probable cause for his July 2014 arrest, the Court declines to reach the issue of whether Plaintiff is also judicially estopped from so arguing, although it appears that Plaintiff is also so estopped. See, e.g., New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001); Hinds v. City of New York, 768 F. Supp. 2d 512, 514–16 (S.D.N.Y. 2010).

8

3, 2013) (finding that the existence of probable cause for arrest precludes an equal protection claim as it provides a legitimate reason for differential treatment). Accordingly, summary judgment is granted as to these claims.

### D. Plaintiff's Deprivation of Constitutional Rights Claim

Plaintiff alleges generally that Defendants violated his rights under the "First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution," in violation of section 1983. (Compl. ¶ 22.) While Defendants seek dismissal of all claims, neither party provides any substantive argument regarding Plaintiff's "deprivation of federal civil rights" cause of action asserted in Count One of the Complaint. Notwithstanding the parties' lack of argument, the claim must be dismissed.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (internal quotation marks and citation omitted). Plaintiff cannot proceed on a generalized theory because more specific constitutional provisions provide an explicit source of constitutional protection for his alleged injuries relating to his claimed false arrest and malicious prosecution. See id. at 395; Johnson v. City of New York, 2010 WL 2771834, at *5–6 (E.D.N.Y. July 13, 2010); Washington v. City of New York, 2009 WL 1585947, at *10 (S.D.N.Y. June 5, 2009). Accordingly, summary judgment is granted as to Plaintiff's deprivation of constitutional rights claim.

P-049

### E. Plaintiff's Monell Claim

A municipality may not be held liable under section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, to impose section 1983 liability on a municipality Plaintiff must "plead and prove . . . (1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to [the] (3) denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995) (citation omitted).

Plaintiff claims that all of the alleged torts committed by the individual Defendants "were carried out pursuant to overlapping policies and practices" of Defendant City of New York, and "were in existence at the time" of the alleged tortious conduct. (Compl. ¶ 28.) However, Monell does "not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy. Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) (citing Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006)) (emphasis added). "Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors[.]" Id. Here, because Plaintiff

10

cannot establish the existence of any tort, he cannot establish municipal liability against the City of New York. See Segal, 459 F.3d at 219.

For the same reason, summary judgment is also granted as to Defendant Rosario with respect to the supervisory liability claim against him. See Raspardo v. Carlone, 770 F.3d 97, 129 (2d Cir. 2014) (finding that where "there [is] no underlying constitutional violation, there is also no supervisory liability").

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED in its entirety. Any of Plaintiff's remaining claims are without merit.[2] The Clerk of the Court is directed to enter judgment in accordance with this order and to close this case.

SO ORDERED.

Dated: December 21, 2017　　　　　　　s/Sterling Johnson Jr.
　　　　Brooklyn, New York　　　　　　Sterling Johnson, Jr., U.S.D.J.

---

[2] While Heck v. Humphrey, 512 U.S. 477 (1994), does not affect the outcome in this case, as Plaintiff's claims otherwise fail as a matter of law, it appears as though Plaintiff's claims are not Heck-barred. See id. at 486–87. Moreover, Heck typically does not bar Fourth Amendment-based false arrest claims. See, e.g., Fifield v. Barrancotta, 353 F. App'x 479, 480–81 (2d. Cir. 2009); Covington v. City of New York, 171 F.3d 117, 123 (2d Cir. 1999). And Heck does not bar actions commenced by plaintiffs no longer in custody. See Huang v. Johnson, 251 F.3d 65, 74–75 (2d Cir. 2001); Patterson v. Travis, 2004 WL 2851803, at *4 (E.D.N.Y. Dec. 9, 2004).

11

P-049